Joseph ROSSANO, Personally and as Mayor of Alvin, Texas, Dwight Rhodes, Andy Reyes, and Andy Desham, Personally and as City Council Members of Alvin, Texas, and Eugenia Cano, Personally and as Attorney for Alvin, Texas, Appellants,

v.

Larry TOWNSEND and Elizabeth Esquivel Brinkerhoff, Appellees.

No. 14–98–01183–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 2, 1999.

Eugenia Anne Cano, Alvin, for appellants.

Sharon Kay Kirklin Middleton, Alvin, for appellees.

Panel consists of Chief Justice MURPHY and Justices ANDERSON and HUDSON.

## OPINION

PAUL C. MURPHY, Chief Justice.

Joseph Rossano, personally and as mayor of Alvin, Texas; Dwight Rhodes, Andy Reyes, and Andy Desham, personally and as city council members of Alvin, Texas; and Eugenia Cano, personally and as attorney for Alvin, Texas (the "appellants" unless otherwise noted), appeal a judgment in favor of Larry Townsend and Elizabeth Esquivel Brinkerhoff (the "appellees" unless otherwise noted), in the appellees' election contest lawsuit involving a zoning election. Appellants bring two issues. We affirm.

## I. Background

The facts are essentially undisputed. On May 4, 1996, the voters of Alvin approved article VIII, section 7, of the city's home-rule charter, establishing procedures for adopting a zoning ordinance. On October 7, 1996, in the Alvin Sun & Advertiser newspaper, the city published a proposed zoning ordinance, identified not by ordinance number but as "Draft 2.4; Sept. 29, 1995." Later, on October 14, the newspaper ran a correction notice, saying that the ordinance should have been identified as "Draft 2.5, Sept. 27, 1996." On May 3, 1997, after public hearings on the proposed ordinance, the proposed zoning ordinance was rejected by voters in a binding referendum. On the referendum ballots, the zoning proposal was designated as ordinance No. 96–EEEE.

Later that year, on December 18, 1997, the city council passed resolution No. 97–R–27, in which council members declared their intent to place a zoning proposal on

the ballot for the May 2, 1998, regularly scheduled election. On February 19, 1998, the council called the zoning election for May 2.

Between December 18, 1997, and May 2, 1998, the city held no public hearings in connection with the proposed zoning ordinance and did not print, or reprint, in a newspaper a copy of the complete proposal submitted to the voters on May 2. On April 13, 1998, however, the city did publish a notice of a general election, to be held May 2, which would include a proposal to adopt "Ordinance No. 98–E an initial municipal zoning ordinance which would divide the City into districts and would provide uses to which the land or buildings might be placed within each district."

On May 2, 1998, Ordinance No. 98–E was approved by voters. On June 18, the ordinance was adopted by the council on final reading.

The ordinance purportedly approved by voters at the May 2, 1998, referendum and approved by the council on June 18, 1998, differed somewhat from the proposed ordinance published in the newspaper on October 7, 1996, as follows:

(1) The ordinance published October 7, 1996, was denominated "Draft 2.4; Sept. 29, 1995," later corrected to "Draft 2.5, Sept. 27, 1996." The ordinance purportedly passed on May 2, 1998, was denominated "Ordinance No. 98–E."

(2) Ordinance No. 98–E contained language describing its passage by the city council on first, second, and third readings and the signature of the mayor and the deputy city clerk whereas the published ordinance did not.

(3) Ordinance No. 98–E reflected a May 2, 1998, voting date in article I, section 4.4, and the published ordinance reflected a May 4, 1996, voting date in article I, section 4.4.

(4) Ordinance No. 98–E did not include the table of contents that was part of the published ordinance.

(5) Ordinance No. 98–E contained the word "permitted" before "uses" in article III, section 3.1(i), and such word in the published ordinance was omitted.

(6) Ordinance No. 98–E, approve by the council, contained the following provision not contained in the ordinance published in the newspaper:

(a) A descriptive caption, series of legislative findings and an ordaining clause;

(b) A provision adopting the findings that read as follows: "*Section 1.* The facts and matters set forth in the preamble of this ordinance are hereby found to be true and correct."

(c) A provision amending the city's code of ordinances that read as follows: "*Section 2.* The Code of Ordinances, City of Alvin, Texas is hereby amended by adding thereto a new Chapter 29 to provide as follows:" [What followed was the new Chapter 29 of the city charter, which was largely identical to the ordinance published in the newspaper in October 1996.]

(d) A repealer clause that read as follows: "*Section 3.* That except as amended herein all other provisions of the Code of Ordinances shall remain in full force and effect. All ordinances in conflict or inconsistent with this Ordinance are hereby repealed to the extent of such conflict or inconsistency."

(e) A severability clause that read as follows:

*Section 4.* In the event any clause, phrase, provision, sentence, or part of this Ordinance or the application of the same to any person or circumstance shall for any reason be adjudged invalid or held unconstitutional by a curt [sic] of competent jurisdiction, it shall not affect, impair, or invalidate this Ordinance as a whole or

any part or provision hereof other than the part declared to be invalid or unconstitutional; and the City Council of the City of Alvin, Texas declare that it would have passed each and every part of the same notwithstanding the omission of any such part thus declared to be invalid or unconstitutional.

The published proposal contained a black-and-white map coded to show the proposed zoning districts. The unpublished map with Ordinance No. 98–E was color-coded and bears substantially the same information; that is, the unpublished map shows the various zoning districts.

On June 1, 1998, the contestants, here the appellees, filed their original petition, seeking a judgment declaring (1) that the resolution passed by the city council on December 18, 1997, was invalid; (2) that the resolution violated article VIII, section 7, of the charter; (3) that the election held May 2, 1998, was invalid insofar as it applied to Resolution 97–R–27; and (4) that the city may not place any such ordinance in its Code of Ordinances or enforce such an ordinance unless and until it has complied with Article VIII, section 7, of the charter by allowing a six-month waiting period after publication of the proposed ordinance and maps for public hearing and debate, after any such resolution is passed, to place a proposed ordinance on the ballot for a binding referendum at a regularly scheduled election.

The case was tried to the court without a jury. In its findings of fact and conclusions of law, the court found that ordinance published in the newspaper in October 1996 and the ordinance adopted by the council in June 1998 were "substantially the same" but contained some differences. The court also found that the maps attached to the two proposals were different. The court found for the contestants-appellees, ruling that Resolution 97–R–27 was invalid and in violation of article VIII, section 7, of the charter, and declaring the

May 2, 1998, election void as to Resolution 97–R–27, or Ordinance No. 98–E.

## II. Discussion

### A. Jurisdiction

The appellants in their first appellate issue complain the trial court lacked subject-matter jurisdiction over the election contest.

In an election contest, the standard of review on appeal is whether from the record it appears that the trial court abused its discretion. *See Green v. Reyes,* 836 S.W.2d 203, 208 (Tex.App.-Houston [14 th Dist.] 1992, no writ). *Also see Slusher v. Streater,* 896 S.W.2d 239, 242 (Tex. App.-Houston [1 st Dist.] 1995 no writ) (trial court has discretion to open secured ballot boxes to determine correct count or any other fact tribunal considers pertinent to fair and just disposition of contest); *Guerra v. Garza,* 865 S.W.2d 573, 576 (Tex.App.-Corpus Christi 1993, writ dism'd w.o.j.) (court has discretion to inspect and evaluate individual ballots where write-in voters spelled candidate's name various ways and wrote candidate's name at various places on ballots). A trial court always abuses its discretion, however, where it clearly fails to analyze or apply the law correctly. *See McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995).

An election contest is not an ordinary lawsuit but is a special legislative proceeding. *See Duncan v. Willis,* 157 Tex. 316, 320, 302 S.W.2d 627, 630 (1957). In an election contest, a district court's authority to act is limited to the subjects or grounds expressly or impliedly authorized by the Election Code. *See* Tex. Elec. Code Ann. § 221.003 (Vernon 1986); *Cohen v. Clear Lake City Water Auth.,* 687 S.W.2d 406, 407 (Tex.App.-Houston [14 th Dist.] 1985, no writ). The tribunal shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because (1) illegal votes were counted or (2) an election officer or other person officially

involved in the administration of the election: (A) prevented eligible voters from voting; (B) failed to count legal votes; or (C) engaged in other fraud or illegal conduct or made a mistake. *See* TEX. ELEC. CODE ANN. § 221.003 (Vernon 1986). An election contest includes any type of suit in which the validity of an election or any part of the elective process is made the subject matter of the litigation. *See Cohen*, 687 S.W.2d at 408. It can include the manner of giving notice. *See Turner v. Lewie*, 201 S.W.2d 86, 88 (Tex.Civ.App.-Fort Worth 1947, writ dism'd). *But see Rouw v. Harrington*, 281 S.W.2d 746, 748 (Tex.Civ.App.-San Antonio 1955, writ dism'd w.o.j.) (jurisdiction of courts in a statutory election contest relates only to matters happening on day of election and pertaining strictly to election, such as casting and counting of ballots and actions and conduct of officials holding election; citing *Roberts v. Hall*, 167 S.W.2d 621 (Tex.Civ. App.-Amarillo 1942, no writ); *Border v. Abell*, 111 S.W.2d 1186 (Tex.Civ.App.-Galveston 1937, no writ)). *Also see* 1 MC-DONALD TEXAS CIVIL PRACTICE § 3:39 (1992 ed.).

■ In their original petition, the contestants complained that the election was invalid because the council failed to wait six months between the time the council approved Resolution No. 97–R–27, on December 18, 1997, and the May 2, 1998, referendum. The contestants also complain that the proposed ordinance was not published in the newspaper six months before the referendum, as required by the city charter. They further complain that because the city council relied on the October 1996 publication, the council prevented voters who moved into town since October 1996 from casting informed ballots.

These complaints are in the nature of complaints that the city officials prevented eligible voters from voting or that city officials by failing to publish, or republish, the ordinance, engaged in fraud or illegal conduct or made mistakes, all grounds within the scope of an election contest

review. *See* TEX. ELEC.CODE § 221.003. The trial court thus had legislative authority to consider these election-related complaints.

■ The appellants argue the district court had no authority because the election process begins when the council orders an election. *See City of McAllen v. Garza*, 869 S.W.2d 558, 560 (Tex.App.-Corpus Christi 1993, writ denied). They contend that the election process began on February 19, 1998, when the council called for the May 2, 1998, general election. The appellants argue that because the contestants complain that the city council did not publish, or republish the ordinance six months before the May 2, 1998, referendum, this date would be a date before February 19, 1998, the beginning of the election process. Thus, the appellants argue, the trial court would have no authority to act. In the case upon which the appellants rely, *City of McAllen v. Garza*, the court held that the district court was without jurisdiction to entertain a declaratory judgment action to declare an election order void after the election process has begun with the calling of an election. *See id.* The court relied on established authority that courts have no power to enquire into the validity of an election until it has been completed. *See id.* (citing *Ex parte Barrett*, 120 Tex. 311, 37 S.W.2d 741, 742 (1931)). Here, the election process has been completed, and the city council has purportedly adopted the zoning ordinance. Therefore, the district court had the authority to consider the validity of the election process, including the issue of the adequacy of notice.

■ The appellants also complain that the contestants' complaint is, in essence, a complaint about the city's authority to hold a referendum and, as such, is not the proper subject for an election challenge. *See State Ex Rel. Weatherford v. Town of Hudson Oaks*, 610 S.W.2d 550, 551 (Tex. Civ.App.-Eastland 1980, writ ref'd n.r.e.); *City of Kingsville v. International Ass'n,*

568 S.W.2d 397, 399 (Tex.Civ.App.-Corpus Christi 1978, no writ). We do not agree that the contestants are complaining about the authority to hold an election. We view the contestants' complaint as one that the city failed to conduct a fair election or did not take all necessary preliminary steps before holding the referendum.

We hold that the trial court had legislative authority to review the contestants' complaints within the scope of the election contest review set out in section 221.003 of the Election Code.

### B. Election contest

The appellants in their second appellate issue complain that even if the district court had jurisdiction, it abused its discretion by invalidating the election.

The process for adopting a zoning ordinance is detailed in article VIII, section 7, of the Alvin city charter, as follows: "The City of Alvin Shall have the power to adopt a zoning ordinance only after (a) allowing a six month waiting period after publication of any proposed ordinance and map(s) for public hearing and debate, and (b) holding referendum at a regularly-scheduled election." CITY OF ALVIN, TEX., CHARTER art. VIII, § 7 (1998).

The language closely tracks section 211.015(c) of the Local Government Code, as follows:

> The provision [sic] of this chapter [Chapter 211. Municipal Zoning Authority] shall not be construed to prohibit the adoption or application of any charter provision of a home-rule municipality that requires a waiting period prior to the adoption of zoning regulations or the submission of the initial adoption of zoning regulations to a binding referendum election, or both, provided that all procedural requirements of this chapter for the adoption of the zoning regulation are otherwise complied with.

TEX. LOC. GOV'T CODE ANN. § 211.015(c) (Vernon 1999).

■■■ We construe a city charter provision according to the rules governing the interpretation of statutes generally. *See Willman v. City of Corsicana,* 213 S.W.2d 155, 158 (Tex.Civ.App.-Waco 1948), *aff'd,* 147 Tex. 377, 216 S.W.2d 175 (1949); 52 TEX. JUR.3D *Municipal Corporations* § 44 (1999). Our interpretation must be fair, rational, reasonable, and with a view accompanying the enacting body's intent and purpose. *See Metropolitan Transit Auth. v. Plessner,* 682 S.W.2d 650, 653 (Tex.App.-Houston [1st Dist.] 1984, no writ); *McKinney v. City of Abilene,* 250 S.W.2d 924 (Tex.Civ.App.-Eastland 1952, writ ref'd n.r.e.). We must give effect to each sentence, clause, and word of a statute if reasonable and possible. *See Perkins v. State,* 367 S.W.2d 140, 145 (Tex.1963). *See also* 67 TEX. JUR.3D *Statutes* §§ 89, 124 (1989). When we review the notice given for an official election, the standard of review is substantial compliance with the law requiring notice. *See Cohen,* 687 S.W.2d at 409; *Greater Beauxart Garden Mun. Util. Dist. v. Cormier,* 596 S.W.2d 597, 601 (Tex.Civ.App.-Beaumont 1980, no writ); *Christy v. Williams,* 292 S.W.2d 348, 350 (Tex.Civ.App.-Galveston 1956, writ dism'd w.o.j.).

■■■ As we mentioned above, the district court had authority to examine the election within the scope laid out in section 221.003 of the Election Code. The district court in its findings of facts found that the ordinance published in the paper in October 1996 differed from the ordinance purportedly approved by voters on May 2, 1998, and adopted by the council in June 1998. The court found that the ordinance approved on May 2 had never been published. The court also found that the city held no public hearings in connection with the proposed ordinance. The lack of publication and the lack of public hearings were, the court found, per se violations of the city charter. These court findings were in the nature of findings that the city officials engaged in fraud, or illegal conduct, or made a mistake. *See* § 221.003.

The city charter's plain language requires a delay of six months between the publication of the proposed zoning ordinance and adoption of the ordinance. The language does not mention a six-month delay between the publication of the proposed ordinance and the referendum. The charter does, however, state that the six-month waiting period is for public hearing and debate and does say that the referendum is binding. This language suggests that the six-month period is for public hearing and debate before the public binding referendum. This suggests the city is required to publish the proposed ordinance, wait six months for public hearing and debate, and then hold the binding referendum. If the proposed ordinance passes the binding referendum, the city council must then enact the ordinance.

■■■ The city suggests in its brief that the six-month waiting period applies only to the enactment not to the referendum. This reading would suggest the city could publish the ordinance and immediately hold a binding referendum, within the time limits imposed by section 4.003 of the Election Code. TEX. ELEC.CODE ANN. § 4.003 (Vernon 1986 & Supp.1999) (Method of Giving Notice). If the proposed ordinance were approved by voters, the city council then would be required to wait for the remainder of the six-month period before ministerially enacting the ordinance. Under this reading, any public hearing and debate after the referendum but before enactment would be pointless. This would make the charter provisions regarding public hearing and debate useless or of no import. We presume, rather, this provision was enacted to be effective. *See Perkins*, 367 S.W.2d at 145. *Cf.* TEX. GOV'T CODE ANN. § 311.016(2) (Vernon 1998) (Code Construction Act) ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended.").

■■■ The city further argues that it did, in fact, publish the ordinance approved in the referendum in that the ordinance published in October 1996 and that the ordi-nance the council enacted in June 1998 were identical. Although much of the substance of the published ordinance and the enacted ordinance is identical, the differences are detailed above and are not disputed. The record supports the trial court's finding that the ordinance adopted was not the ordinance published.

■■■ The city's reliance on the October 1996 publication is unreasonable for other reasons. The election notice published by the city on April 13, 1998, stated that at the May 2, 1998, general election the voters were to cast ballots in connection with Ordinance No. 98–E. For the city to expect voters in April and May 1998 to recall an ordinance published in October 1996 is unreasonable. Even if a voter were to have recalled the October 1996 publication, were to have saved the published ordinance, or were to have reviewed past issues of the newspaper to find the published ordinance, the voter would see not "Ordinance No. 98–E" but would see, rather, "Draft 2.4; Sept. 29, 1995," later corrected to "Draft 2.5, Sept. 27, 1996." The voter by reading the notices in the newspaper would not have been able to determine the substance of the zoning proposal being decided in the May 2, 1998, referendum. To determine the substance of the zoning proposal, the voter would have had to obtain a copy of the proposed ordinance elsewhere, perhaps from city hall. Although, it may have been that the ordinance published in October 1996 was in substance the same ordinance approved by the council in June 1998, a voter would not have known this. The purpose of article VIII, section 7, is to inform voters of the substance of the referendum proposal by newspaper publication. Publication under a different title as was done here does not fulfill this requirement.

Nor is it reasonable, as the city suggests, for the council to publish the proposed ordinance once, and then hold a series of referendums, each referendum notice identifying the published ordinance

with a different identifier, until the council gets a positive vote. This would defeat the purpose of the charter provision, which is to allow voters, after reading a proposed ordinance published in the newspaper and after public hearing and debate, to decide whether to adopt a zoning ordinance.

The trial court did not abuse its discretion by invalidating the May 2, 1998, election.

### III. Conclusion

Having overruled both of the city's appellate issues, we affirm the trial court's judgment.