Opinion issued April 15, 2010.

 

 



 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

____________

 

NO. 01-08-00016-CV

____________

 

BRUCE R. HOTZE, Appellant

 

V.

 

BILL WHITE, MAYOR; CITY OF HOUSTON, Appellees

 

 



On Appeal from the 133rd District Court

Harris County, Texas

Trial Court Cause No. 2006-70981

 

 



MEMORANDUM OPINION

 

          The
appellant, Bruce R. Hotze, appeals from a final judgment dismissing his lawsuit
against appellees, the City of Houston and Mayor Bill White (collectively, “the
City”) and requesting a declaration that two propositions, Proposition G and
Proposition H, are invalid as a matter of law. 
We reverse the trial court’s final judgment and remand for further
proceedings consistent with this opinion. 

Background

A. 
Prior Litigation:  Propositions 1
and 2

          The
instant litigation has its roots in two amendments to the Houston City Charter,
Propositions 1 and 2, which were before voters in November 2004, and which
remain the subject of litigation between the parties.  See White v. Robinson, 260 S.W.3d 463,
466 (Tex. App.—Houston
[14th Dist.] 2008, pet. granted). 
Proposition 1 was placed on the ballot pursuant to the City’s own
motion.  Id.  Proposition 1 pertained to “Limits on Annual
Increases in City Property Taxes and Utility Rates.”  Id.  Proposition 1 granted the City “full
authority to assess and collect any and all revenues of the city without
limitation, except as to ad valorem taxes and water and sewer rates.”  Id.  Proposition 1 imposed a limit on ad valorem
taxes and water and sewer rates by requiring that the City Council obtain voter
approval before increasing (1) property tax revenues “above a limit measured by
the lesser of 4.5% or the cumulative combined rates of inflation and population
growth,” or (2) water and sewer rates above the “cumulative combined rates of
inflation and population growth.”  Id.  In contrast, Proposition 2 resulted from a
citizen-initiated referendum petition and concerned “Limits on All Combined
City Revenues.”  Id. 
Proposition 2 was supported by Hotze and others and would have capped
total revenue by requiring voter approval before the City may increase total
revenues from all sources by more than the combined rates of inflation and
population.  Id.

          On
the November 2004 ballot, the electorate was allowed to vote for or against
each proposition.  Id. 
Proposition 1 and Proposition 2 each passed with a majority of the votes
cast on the particular proposition. 
Proposition 1 received more favorable votes than Proposition 2.  Id.
at 467; Tex. Elec. Code Ann. § 221.002,
233.006(a)–(b) (Vernon 2003).

          After
the election, the City determined that Proposition 1 was legally binding and
Proposition 2 would not be enforced.  In
the election ordinance, the following “poison pill” provision was included after
the text of Proposition 1:








If another proposition for a Charter amendment
relating to limitations on increases in City revenues is approved at the same
election at which this proposition is also approved, and if this proposition
receives the higher number of favorable votes, then this proposition shall
prevail and the other shall not become effective.

 

Alternatively, under Article IX, section 19, of the
City Charter, if two inconsistent charter amendments are approved in the same
election, only the amendment receiving the greater number of votes
prevails.  That provision provides, in
pertinent part, “. . . at any election for the adoption of amendments if the
provisions of two or more proposed amendments approved at said election are
inconsistent the amendment receiving the highest number of votes shall
prevail.”

 

Id.  On December 22, 2004, Hotze
and others filed suit against the City, the Mayor, and the City Council,
seeking a declaration that Proposition 2 was effective and could coexist with
Proposition 1, and that both propositions effectively amended the city
charter.  Id.

          After
the City filed a plea to the jurisdiction asserting that the plaintiffs lacked
standing for their claim, and moved for summary judgment on the basis that
Proposition 1 was the only effective amendment, the trial court denied the plea
and the summary judgment motion.  Id.  The trial court subsequently denied the City’s
request for reconsideration of its summary judgment motion and granted a
summary judgment motion filed by the plaintiffs.  Id. 
The City appealed the trial court’s final judgment to the Fourteenth
Court of Appeals.  Id. 


          Meanwhile,
the plaintiffs sought mandamus relief in this Court, contending that the
defendants failed to perform certain ministerial duties in relation to the
election.  Id. at 468.  We held that the Mayor had a
non-discretionary duty to certify both amendments to the Secretary of State,
but expressed “no opinion as to . . . whether the language of the
proposition 1 and the City Charter requires that proposition 2 be declared
invalid.”  In re Robinson, 175
S.W.3d 824, 832 (Tex. App.—Houston
[1st Dist.] 2005, orig. proceeding).  We
also held that the City Council had a non-discretionary duty to enter an order
in the city records declaring that both propositions had been adopted by
voters.  Id. The City Council and Mayor
complied with the Court’s ruling.  See
City of Houston Ordinance,
No. 2005-568 (May 4, 2005) (adopting Propositions 1 and 2 election results).

          On
April 3, 2008, the
Fourteenth Court of Appeals held that Hotze and the other plaintiffs did not
have standing for their challenge to the City’s post-election interpretation of
the two propositions based on their working to place the proposition on the
ballot, contributing to the campaign for the proposition, and voting for
Proposition 2.  White, 260 S.W.3d
at 473.  Concluding that the plaintiffs
were challenging the implementation and interpretation of the results of
the  election, not the election process
itself, and explaining that taxpayer status does not create standing to
challenge election results, the court held that the plaintiffs had not alleged
a distinct injury caused by the City’s post-election interpretation of the
propositions and thus lacked standing.  Id.  The Fourteenth Court of Appeals remanded to
the trial court to allow the plaintiffs an opportunity to replead an acceptable
basis for standing.  Id. at 476.  

B. 
Current Litigation:  Propositions
G and H 

          Concerned that the uncertainty during
the resolution of the Proposition 1 and 2 litigation could complicate the City’s
finances, the Mayor and the City Council approved putting two new propositions,
Propositions G and H, on the November 7, 2006 ballot.  Proposition G revised the calculation for the
city charter’s limitations on the City’s revenues.[1]  Proposition H permitted the City to raise
revenues for police, fire, and emergency services in excess of the revenues
allowed under any revenue limitations contained in the city charter.[2]  

          On
November 3, 2006, Hotze filed a declaratory judgment action against the City
seeking a declaration that Proposition G, as it was to appear on the ballot in
the November 7, 2006 election, was “illegal and invalid as a matter of law.”  Hotze sought no immediate relief of any kind
regarding these allegations.  The
election was held on November 7, 2006. 
Proposition G passed with 61.25% of the vote, and Proposition H passed
with 77.70% of the vote.  The City
Council canvassed and declared the results of the election on November 15, 2007.  Thirty-three days later, Hotze amended his
petition to include an election contest, seeking a declaration that
“Proposition G and Proposition H are both illegal and invalid as a matter of
law.”  See Tex. Elec. Code Ann §
221.002, 233.006(a)–(b).  Hotze’s amended
petition was styled “Plaintiff’s/Contestant’s First Amended Original Petition
Seeking Declaratory Judgment and Asserting an Election Contest.”

          The
City subsequently filed a Plea to the Jurisdiction, and then an Amended Plea to
the Jurisdiction, arguing that the trial court did not have subject matter
jurisdiction over this action because Hotze’s claims are time-barred by the
Texas Election Code.  Tex. Elec. Code Ann § 221.002,
233.006(a)–(b).  The trial court granted
the City’s amended plea to the jurisdiction as to all of Hotze’s claims.  

          In
a single point of error, Hotze contends that the trial court erred in ruling
that it lacked jurisdiction to determine his challenges to Propositions G and
H.  Hotze asserts that, because he is now
only seeking a declaratory judgment regarding Propositions G and H and no
longer pursuing any claims regarding the propositions as election contest, his
claims are not time-barred under the Texas Election Code.  We examine these arguments below.  

Standard of
Review

          “A party may contest a trial court’s
subject matter jurisdiction by filing a plea to the jurisdiction.”  Tex. Dep’t of Transp. v. Jones, 8
S.W.3d 636, 638 (Tex. 1999).  We review a
trial court’s order granting or denying a plea to the jurisdiction de
novo.  Hoff v. Nueces County, 153
S.W.3d 45, 48 (Tex. 2004).  When
reviewing such an order, “we consider the facts alleged by the plaintiff and,
to the extent it is relevant to the jurisdictional issue, the evidence
submitted by the parties.”  Tex.
Natural Res.  Conservation Comm’n v.
White, 46 S.W.3d 864, 868 (Tex. 2001). 
Here, the parties did not submit any evidence.  Therefore, we look solely to the allegations in
Hotze’s pleadings.

          A plea to the
jurisdiction challenges a trial court’s authority to determine the subject
matter of the cause of action, but without defeating it on the merits.  City of Houston v. Northwood Mun. Util.
Dist. No. 1, 73 S.W.3d 304, 308 (Tex. App.—Houston [1st Dist.] 2001, pet.
denied) (citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554
(Tex. 2000)).  While the underlying
claims may form the context in which a plea to the jurisdiction is raised, the
purpose of the plea is not to preview or delve into the merits of the case, but
to establish the reason why the merits of the underlying claims need not be
reached.  Id.  

          In a plea to
the jurisdiction, “the pleader must allege facts that affirmatively demonstrate
the court’s jurisdiction to hear the cause.” 
City of Houston v. Rushing, 7 S.W.3d 909, 913 (Tex. App.—Houston
[1st Dist.] 1999, pet. denied).  In
reviewing a jurisdictional ruling, we construe the pleadings liberally in favor
of the plaintiff, look to the pleader’s intent, and accept factual allegations
as true.  Tex. Dep’t of Parks & Wildlife
v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Tex. Ass’n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  We indulge every reasonable inference and
resolve any doubts in the nonmovant’s favor.  Miranda, 133 S.W.3d at 228.           




Analysis

A.  Election Contest Claims

 

An election contest is
a special proceeding created by the Legislature to provide a remedy for
elections tainted by fraud, illegality or other irregularity.  Blum
v. Lanier, 997 S.W.2d 259, 262
(Tex. 1999);  Tex. Elec. Code Ann. § 233.003 et. seq.  “[A]n
election contest includes any type of suit in which the validity of an election or any part of the elective process is made
the subject matter of the litigation.”  Rossano v. Townsend, 9 S.W.3d 357, 362
(Tex. App.—Houston [14th Dist.] 1999, no pet.) (emphasis added).

The Election Code
provides a strict timetable for the filing of such claims.  Under the Code, an election contest may not be brought
earlier than the day after election day and must be filed within thirty days
after the return date of the election.  Tex. Elec. Code Ann §§ 221.002,
233.006(a)–(b); Arrendondo v. City of Dallas,
79 S.W.3d 657, 670 (Tex.
App.—Dallas 2002, pet. denied).  The
thirty-day deadline is jurisdictional and non-waivable.  Id.

          On appeal, Hotze now states that he is
only pursuing his claims regarding Propositions G and H as declaratory judgment
actions and he will “no longer pursue the election contest.”  However, we
note that the vast majority of claims contained in Hotze’s amended petition are
challenges to the language used by the City to place Propositions G and H on
the ballot and attack
the facial legality of the ballot.  In
these claims Hotze, inter alia,
complains that the ballot language violates section 9.004(d) of the Texas Local
Government Code and is “misleading,” “vague,” “ambiguous,” “not sufficiently
definite,” and globally “does not accurately describe the object and effect of
the Proposition . . . causing the voters to be intentionally mislead [sic].”  These claims are challenges
to the election process itself for Propositions G and H.  See, e.g., Blum, 997 S.W.2d at 262–63; Wright v. Bd. of
Trs. of Tatum Indep. Sch. Dist., 520 S.W.2d 787, 792
(Tex. Civ. App.—Tyler 1975, writ dism’d).  In
other words, these claims challenge the process by which the City presented the
propositions to the electorate as illegal and invalid.  As such, the only statutory mechanism to bring such
challenges is a timely filed election contest. 
Blum, 997 S.W.2d at 262–63.  It is undisputed by the
parties that Hotze’s challenges to the ballot language of Propositions G and H
were not filed timely under the Texas Election Code.  Tex. Elec. Code Ann §§ 221.002, 233.006(a)–(b).[3] 

          We
do not find—nor has Hotze cited—any authority permitting him to maintain his
challenges to the ballot language of Propositions G or H after an election has
been held independent of the strict statutory remedy available by an election
contest.  See generally Rodriguez v. Cuellar, 143 S.W.3d 251 (Tex. App.—San
Antonio 2004, pet. dism’d) (holding “elections are politically time sensitive,
and legislative remedies for contested elections are to be strictly
followed.”).  Accordingly,
since a timely election contest was not filed, the trial court lacked subject
matter jurisdiction to hear any claims challenging the facial legality of
Propositions G and H on the ballot.[4]

B.  Declaratory Judgment Claims

 

In addition to
asserting untimely election contest claims challenging the election process of
Propositions G and H—over which the trial court has no jurisdiction—Hotze’s
amended petition also seeks a declaratory judgment regarding the City’s
implementation and interpretation of the election results for Proposition H.  See,
e.g., White, 260 S.W.3d at 472 (explaining
difference between challenge to election process and challenge to
implementation and interpretation of election results and holding that
challenges to City’s interpretation and implementation of election results of
referendum do not constitute challenges to validity of election or election
process).  The amended petition provides
in pertinent part: 

Proposition H did not advise the voters that it was a one time
exception to Proposition 2 of 2004, an amendment of Proposition 2, or a
continuing forced budget resolution.  As such, it failed to comply with
state law.  If Proposition H was
only a one time exception, it cannot be implemented because the Mayor of
Houston has refused to publish and implement Proposition 2.  If Proposition H was an amendment of
Proposition 2, it is void because the election of Proposition H was not
noticed as a Charter Amendment and because
Proposition 2 is still in litigation at the Mayor’s request.  If
Proposition H was a continuing resolution, it is void because it violates state
law requiring an annual budgeting process.

 

 (emphasis added).  Hotze further elaborates on this challenge in
his appellate briefing regarding Proposition H, explaining that, because
Proposition 2 has never been recorded in the City Charter, Proposition H
“cannot purport to amend something that has not even been recorded.”[5]   

None of these
challenges concern the process of the election or the validity of the election
itself because none of these contentions assert that there was any flaw in how
the election was conducted.  See generally White, 260 S.W.3d at 472; Rossano, 9 S.W.3d at 362; Blum, 997 S.W.2d at 262.  Instead, these assertions appear to challenge
and seek relief regarding the City’s implementation and interpretation of an
election result.  In other words, Hotze’s
challenge is not that Proposition H was passed by the electorate in some
improper way, but rather, as passed, that it is “invalid and illegal as a
matter of law” and cannot become part of the City’s Charter because it violates
“state law requiring an annual budgeting process,” “cannot purport to amend
something that has not even been recorded[,]” and cannot be effective because no
order has declared their adoption. 
Accordingly, we hold that Hotze was not required to bring these
challenges under the Texas Election Code.  See,
e.g.,  Rossano, 9 S.W.3d at 362. 
The next question, then, is whether Hotze has standing to make these challenges
through this declaratory judgment action.

C.      Standing to Challenge
Results
of the Election

 

            Standing is a constitutional prerequisite to
maintaining suit in federal or state court. 
S. Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 307 (Tex.
2007); Williams v. Lara, 52
S.W.3d 171, 178 (Tex.
2000).  As a component of subject
matter jurisdiction, standing is never presumed and cannot be waived.  Tex. Ass’n of Bus., 852 S.W.2d at 443–44, 445.  A party may challenge subject
matter jurisdiction by a plea to the jurisdiction.  Bland Indep. Sch. Dist., 34 S.W.3d at 554. 

For a plaintiff to
have standing to challenge the results of the election, court “decisions have
always required a plaintiff to allege some injury distinct from that sustained
by the public at large.”  Brown v.
Todd, 53 S.W.3d 297, 302 (Tex. 2001). 
This requires “an actual, not merely a hypothetical or generalized
grievance.”  Id.  Hotze argues that he satisfies this standard because he participated
in some or all of the following activities: (1) organizing a petition drive for
Proposition 2; (2) helping draft the final wording of the petition and
participating in underwriting this effort; (3) signing the petition later known
as Proposition 2; (4) working on the “Let the People Vote” and “Vote Yes on
Prop 2” campaigns to ensure passage of Proposition 2; (5) contributing
substantially to the “Vote Yes on Prop 2” campaign; (6) leading the “Vote Yes
on Prop 2” advertisement campaign;  (7) voting
in favor of Proposition 2; (8) running a campaign against the passage of
Proposition G and H called “Let the people vote, Houston”; (9) being a
financial contributor for the campaign against Proposition G and H; and (10)
voting against Proposition G and H.  The
crux of Hotze’s argument is that he has standing to bring a declaratory
judgment action regarding the implementation and interpretation of Proposition H
because Proposition H “seek[s] to change the effect of Proposition 2,” which he
actively supported as a petition signer, sponsor and voter.  We disagree. 

The Fourteenth Court
of Appeals’ decision in White v. Robinson, regarding almost identical allegations to those raised by
Hotze, is instructive to our analysis here.  260 S.W.3d at 463.  In this
case—as in White—Hotze has not pleaded facts affirmatively
demonstrating the trial court’s jurisdiction because he has not shown any fact
that would cause him injury as distinct from the public at large.  See id. at 475–76; Brown, 53 S.W.3d at 302.  The facts
alleged by Hotze only give him standing to bring a declaratory judgment action
challenging the election process for Proposition H and not an action challenging
the City’s implementation and interpretation of the election results.  White, 260 S.W.3d at 469–473 (essentially identical facts only conferred
standing to challenge election process and not standing to bring action
challenging implementation and interpretation of results of referendum
election).  As a voter and person
who actively opposed the implementation of Proposition H and who seeks to
protect the results of the election regarding Proposition 2, Hotze does possess
a particular interest in ensuring that Proposition H is submitted to the
electorate in a properly worded ballot.  Id.
at 471.  However, this interest does
not extend to challenging the implementation and interpretation of the results
of the election for Proposition H itself.  Id.
 Nor does such standing extend to
bringing an action to protect the results of the election regarding Proposition
2 from change.  Id. (“[A] referendum sponsor’s
standing is limited to challenging the election process and does not extend to
protecting the results from subsequent change.”).  

          In short, Hotze has not claimed an
injury caused by the implementation or interpretation of Proposition
H by the City that is distinct from the injury, if any, suffered by other
voters, taxpayers or citizens.  Because
Proposition 2 was submitted to the electorate and passed by voters, and
adoption was reflected in the city records, Hotze has not alleged any distinct
injury caused by Proposition H by virtue of his sponsorship activities
regarding Proposition 2 and opposition activities regarding Proposition H.  Instead, Hotze is now essentially equal to all
other persons who voted for Proposition 2 and who wish to ensure it is
subsequently enforced.  In a broader
sense, Hotze is now equal to all City taxpayers, and citizens, who wish to
ensure Proposition 2 is enforced because they might be affected by its terms.  Accordingly we hold that Hotze has not claimed
an injury caused by the implementation or interpretation of Proposition H that
is distinct from the injury, if any, suffered by other voters, taxpayers, or
citizens and therefore he does not have standing to maintain this action.

Nevertheless, Hotze argues that, under Blum
v. Lanier, he has alleged sufficient facts to establish standing to assert his declaratory
judgment claims challenging Propositions G and H.  997 S.W.2d at 262.  We disagree.  Hotze’s reliance upon this opinion is misplaced.
 The holding in Blum addresses the standing required for seeking injunctive relief—not declaratory relief—regarding
ballot propositions.  As the court held
in Blum, “a
qualified voter who signs an initiative petition has standing to seek, and the
trial court has jurisdiction to issue, an injunction forbidding the City’s use
of a misleading ballot proposition so long as the injunction does not operate
to delay or cancel the called election.”  Id. at
264 (holding that Blum had standing to seek injunctive relief to prevent
City’s violating law and subverting election by misleading voters through vague
and misleading language in ballot proposition describing proposed charter
amendment); see also Glass v. Smith, 244 S.W.2d 645 (Tex. 1951)
(affirming writ of mandamus requiring municipal authorities to hold
voter-initiated election after requisite number of signatures were collected,
concluding that signors had justiciable interest in their proposed ordinance
being submitted to people for vote).  As
the court further explained, a qualified voter has standing to seek such relief
in part because, “injunctive relief may provide a remedy that cannot be
adequately obtained through an election contest.”  Blum, 997 S.W.2d at 264.  Here, however, Hotze did not seek an
injunction to prevent the language from appearing on the ballot, nor does he
seek injunctive relief of any kind in this case.  Accordingly, we find that Hotze has not pleaded
facts establishing that he has standing to bring a declaratory judgment challenging
the election results of Proposition H. 

Conclusion

If a plaintiff fails
to plead sufficient facts affirmatively demonstrating the trial court’s
jurisdiction, but the pleadings do not affirmatively demonstrate incurable
defects in jurisdiction, he should be afforded the opportunity to amend.  County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex.
2002).  If, however, the pleadings
affirmatively negate the existence of jurisdiction, a plea to the jurisdiction
may be granted without allowing the plaintiff an opportunity to amend.  Id. 
The opportunity to amend pleadings that are insufficient to establish,
but do not affirmatively negate, jurisdiction arises once a court determines
the pleadings are insufficient.  Tex. A & M Univ. Sys. v. Koseoglu, 233 S.W.3d
835, 839‑40 (Tex. 2007).  In
particular, a plaintiff deserves the opportunity to amend his pleadings, if the
defects are curable, when an appellate court determines a plea to the
jurisdiction should have been sustained. 
See id. 

Hotze has failed to
establish standing, but his pleadings do not affirmatively negate standing.  The possibility remains that Hotze may allege
other facts demonstrating standing, and, therefore, he must be allowed a
“reasonable opportunity” to amend his pleadings before the trial court’s final
disposition on the plea to the jurisdiction. 
See White, 260 S.W.3d at 476.

Accordingly, we
reverse the trial court’s final judgment and remand for further proceedings
consistent with the opinion.

 

 

 

                                                                   George
C. Hanks, Jr.

                                                                   Justice

 

Panel consists of Justices Alcala, Hanks, and Wilson.[6]

 

Justice Wilson, dissenting.

 

 

 











[1]           Proposition G read as follows:

 

Exclusions from limits on City revenues.

 

(a)       Revenues of enterprise
funds are not included in revenues limited by this Charter.  The preceding provisions do not affect
Charter limitations on the growth of property taxes or water and sewer rates
contained in Article III, Section 1, and Article IX, Section 20, of this
Charter.

 

Enterprise funds (e.g. the Airport System) are all those largely
self-sufficient activities not funded with property tax revenues.  To maintain the self-sufficiency of the Water
and Sewer System, the revenues of that System can only be used for the purposes
of that System, and limited drainage purposes, as set forth in the existing
debt covenants of that System.  Those
revenues cannot be used for any other purpose.

 

(b)  For the purposes of
calculating any revenue limitation in this Charter, amounts resulting from
termination of or reduced participation in a tax increment reinvestment zone
shall be treated in the same manner as revenues from annexed areas in Article
III, Section 1.

 

(c)  City Council may prescribe
methods for complying with limits on revenues in this Charter to account for
changes in accounting standards or practices.

 





[2]           Proposition H read as follows:

 

To pay for the public safety needs of an increased
population, the City of Houston may collect revenues of $90 million for police,
fire and emergency medical services and related communications and dispatch
costs, so long as the Fiscal Year 2007 (Tax Year 2006) combined property tax
rate is at or below the combined property tax rate in Fiscal Year 2006 (Tax
Year 2005), notwithstanding any applicable revenue limitations in the Charter.  Any amount collected under this authority
must be spent on police, fire and emergency medical services and related
communications and dispatch costs.  This
amount shall be added to any applicable revenue limitations in Fiscal Year 2007
(Tax Year 2006) and any base used to calculate revenue limitations in following
budget years.





[3]         The
relevant dates in the instant case are undisputed by the parties.  Hotze first brought his declaratory judgment
action challenging the validity of Proposition G on November 3, 2006, before the
period permitted for filing an election contest.  Four days later, on November 7, 2006, the
voters approved both Proposition G and H. 
The Houston City Council officially declared the results of the election
on November 15, 2007.  Thirty-three days
later, on December 18, 2006, Hotze amended his petition to include his election
contest challenging the validity of the Propositions.  Pursuant to the Texas Election Code these
challenges are untimely.  Tex. Elec. Code Ann §§ 221.002,
233.006(a)–(b).





[4]           The City argues that, since the
election contest claims are time-barred, this entire action should be dismissed
as moot because there is no case in controversy between the parties.  We disagree. 
As discussed below, not all of Hotze’s claims in the case can be
characterized as “election contest” claims.





[5]           We note that Hotze’s
motion for new trial and appellate briefing argues that the intent of his
pleadings is also to challenge as invalid and illegal the implementation of
both Propositions G and H under Section 9.005(b) of the Texas Local Government Code on the grounds that neither proposition is
effective because no order has yet declared their adoption.  However, this argument is not made in either
the original or amended petitions, nor are there any factual allegations made
in these pleadings to support this argument. 

 





[6]           The
Honorable Davie L. Wilson retired Justice, First Court of Appeals,
participating by assignment.